JAMES VAN WINKLE, appellant, *and* HENRY SCHOONMAKER, executor of Mary D. Van Winkle, respondent.

A married woman is incapable of devising real estate. She is also incapable of disposing of her chattels by will without the consent of her husband. Such a will, being a mere nullity, will not be admitted to probate.

The wife may, with the consent of her husband, make a valid will of her personal estate, and such consent may be by parol; it may be express or implied, and may be before or after the death of the wife.

The consent of the husband is not obligatory, but is revocable at his pleasure at any time before probate granted. It is nothing more nor less than a caveat that the will be admitted to probate. If that is revoked, probate cannot be granted.

If, in consequence of the husband's assent, rights are acquired by other parties to property disposed of by the will, *it seems* that in such case he would not be permitted to retract his assent and oppose the probate.

Where a married woman made a will with the consent, and in parol by the procurement of the husband, and after the death of the wife, a day was

fixed for the reading of the will by the husband at his house, and notice given thereof to the heirs of the wife by the husband, who also knew of the will being taken to the surrogate's office for probate, and made no objection to it. The husband afterwards withdrew his consent, and filed a caveat against admitting the will to probate. The Orphans Court having admitted the will to probate, the decree of the Orphans Court was reversed.

*Bradley*, for appellant.

THE ORDINARY. The appeal is from a decree of the Orphans Court of Bergen county, admitting to probate the will of Mary D. Van Winkle, the wife of the appellant. The will disposes of both the real and personal estate of the testatrix. It is dated on the first of February, 1859, and was offered for probate on the twenty-fourth of March ensuing, and on that day a caveat was filed by the husband against the probate.

It appears, from the evidence, that the scrivener was requested, by the husband of the testatrix, to write the will, and was furnished by him with instructions for that purpose. After the death of the testatrix, a day was fixed for the reading of the will at the house of the husband. Notice was given by him to the heirs of his wife, and the will was read there in his and their presence. He knew of its being taken to the surrogate's office for probate, and made no objection to it.

At the time the will was executed, both the scrivener and the husband of the testatrix supposed that she had a legal right to dispose of her property, real and personal, by will. The mistake was not discovered until the will was taken to the surrogate's office for probate. The fact of the testatrix being a married woman appearing upon the face of the will, the surrogate suggested doubts in regard to its validity. He told the parties, however, that the matter might be arranged, the heirs of the testatrix being of age, by their releasing to the devisee the land devised to her under the will. The husband consented to the probate of the will, if the devises, as well as the bequests, could be carried into effect. The heirs

refused to consent to the proposed arrangement, and thereupon the husband filed a caveat against the probate. The testatrix and her husband having been married over twenty years, the case stands entirely clear of the operation of the act of 1852 for the better securing the property of married women.

As to the real estate, the will is clearly invalid. A married woman is incapable of devising real estate. 2 *Bla. Com.* 498; *Nix. Dig.* 874, § 3.

She is also incapable of disposing of her chattels by will without the consent of her husband. Such a will, being a mere nullity, will not be admitted to probate. 3 *Bla. Com.* 498; 4 *Coke's Rep.* 51, *b ;* 1 *Williams on Executors* 45.

But with the consent of her husband, the wife may make a valid will of her personal estate, or even of the goods of her husband. Such consent may be by parol, may be express or implied. It may be before or after the death of the wife, as if a woman makes a will of the goods of her husband and dieth, and after the probate of the will the husband delivers the goods to the executor, he hath made it a good will, notwithstanding he was not privy to the making thereof. It shall be intended, that by the delivery of the goods by the husband to the executor according to the will, he assented to the making thereof. *Perkins on Conveyances,* "*Devises,*" ch. 8, § 501; 1 *Swinb. on Wills* 80, *part* 2, § 9.

In the case now under consideration, the will was made with the knowledge and consent of the husband of the testatrix. His consent was given by implication, both before and after the death of the testatrix.

But it is objected that the consent is inoperative, because it was given by the husband under a mistaken apprehension of his rights. He believed that his wife had a perfect right, under the act of 1852, to dispose of her property without his consent. No consent therefore, it is said, can be implied from his acquiescence. Even his express consent, to be available, must be an intelligent consent. However consonant the objection may seem to our ideas of justice, I do not perceive

Van Winkle *v.* Schoonmaker.

upon what principle it can rest. As a general rule, it is clear that a party cannot be relieved, even from his contract, by reason of a mistake in law. Here is a mere waiver of his interest in the property bequeathed by the wife. The husband consents that the wife shall dispose of his property, or of her property in which he has an interest.

The consent is founded upon no consideration. It is not legally binding. It may be revoked at the husband's pleasure. It is personal to the husband, and no more than a waiver of his rights as her administrator. It can only give validity to her will in case he survives his wife. But how can it be said to be void or inoperative by reason of a mistake of his rights. If no legal rights have been acquired under the consent, it is clearly inoperative. If such rights have been acquired, it is not perceived how they can be lost by reason of an error in law committed by the husband.

It is further objected that the consent is inoperative, because it was a qualified assent—an assent to the will as an entirety, valid in all its parts. This qualification was in terms annexed to the consent made, at the surrogate's office, to the probate of the will. But no such qualification was annexed, in terms at least, to the original assent made to the will at the time of its execution. If this consent could be regarded as a matter of contract—if, for example, the husband, by an express agreement, consents that the wife shall dispose of her entire estate by will, provided she bequeaths one half of it for his benefit, or in such mode as he should suggest, the failure to comply with the terms might terminate the consent. But it is not perceived how this doctrine is to operate in case of an implied consent. And if the husband consents that the wife may dispose of all her property by will, that consent cannot be invalid because a part of her property is by law incapable of being disposed of by will. There is in fact no room for the application of either of these objections. The consent is not obligatory, but is revocable at the pleasure of the husband at any time before probate granted. It is nothing more nor less than a consent

that the will be admitted to probate. If that is revoked, probate cannot be granted. 2 *Swinb. on Wills* 81, *part* 2, § 9; *Henley* v. *Phillips*, 2 *Atkyns* 49; 1 *Roper on Husb. and Wife* 170; 1 *Bright on Husb. and Wife* 65; 1 *Williams on Ex'rs* 46; 1 *Jarman on Wills* 31.

Some of the cases seem to maintain a different doctrine. *Brook* v. *Turner*, 2 *Mod.* 172.

It is reported to have been held by Sir H. Jenner Fust, in *Maas* v. *Sheffield*, that if after the death of the wife the husband does assent to a particular will, he is bound by that assent; and as a consequence of that decision, it is stated by elementary writers, that if, after the death of the wife, the husband acts upon the will, or once agrees to it, he is not, *it seems*, at liberty to retract his assent and oppose the probate. 1 *Williams on Ex'rs* 47, and *note w;* 1 *Bright* 65, and *note d*.

As applied to a particular state of facts, that may be true. If, for instance, the executor, in advance of the probate, with the assent of the husband, dispose of the property bequeathed to third persons, or if rights are otherwise acquired under the will, it may well be that the husband would not be permitted to retract his assent and oppose the probate.

But this will be found not to affect the general principle, that the consent is revocable by the husband at any time before probate.

The decree of the Orphans Court must be reversed.